**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
***Southern Division***

| | | |
|---|---|---|
| **MERRY WILEY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-21-2767** |
| **LLOYD J. AUSTIN, III,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Merry Wiley brings this civil action against Defendant Lloyd J. Austin, for Unlawful Discrimination Based on Race/Color (Count I); Unlawful Discrimination Based on Sex (Count II); Retaliation (Count III); Retaliatory Hostile Work Environment (Count IV); and Violation of the Fair Labor Standards Act (Count V), under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Pending before the Court is Defendant's Partial Motion to Dismiss, ECF No. 11.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's motion is granted.

[1] Also pending before the Court is Defendant's Motion to Dismiss or for Summary Judgment, ECF No. 5, which is moot; Plaintiff's Joint Motion for Extension of Time to File Response as to ECF No. 5, Motion to Dismiss, ECF No. 6, which is moot; Plaintiff's Motion for Leave to File a First Amended Complaint, ECF No. 7, which is granted. Defendant's Consent Motion for Extension of Time, ECF No. 10, which is granted; and Plaintiff's Consent Motion for Extension of Time to File Response/Reply as to ECF No. 11, Motion to Dismiss, ECF No. 14, which is granted.

## I. BACKGROUND[2]

### A. Factual Background

Plaintiff is a "female African-American human resource professional" who worked as an Ombudsman[3] at the Department of Defense's ("Agency") Washington Headquarters Services ("WHS"), Human Resources Directorate ("HRD"), Office of the Director, in Alexandria Virginia. ECF No. 8 ¶ 2. Defendant is the Agency head. *Id.* ¶ 3.

"In August 2013, Plaintiff started as an Ombudsman for HRD, and in August 2015 her services as Ombudsman were expanded to service all WHS and CMO employees." *Id.* ¶ 17. Plaintiff states that her direct supervisor, Mr. Christopher Kapellas, "forced her to administer the Ombudsman program [("the program")] outside of the standards of practice and code of ethics for Federal Organizational Ombudsman as established by the International Ombudsman Association (IOA) and the Coalition of Federal Ombudsman (COFO)." *Id.* ¶ 18. Plaintiff was prohibited from providing confidentiality and anonymity to employees who sought the services of the program and employees who utilized the program were forced to do so outside of working hours which limited the reach of the program and forced Plaintiff to work a substantial amount of unpaid overtime. *Id.* ¶¶ 19, 20. Plaintiff's employment placed her in a position to hear complaints about senior leadership, particularly Mr. Kapellas and Ms. Sylana Tramble, both of whom did not want the program to operate independently as it should. *Id.* ¶¶ 21, 22.

Plaintiff states that visitors to the Ombudsman office complained that the office "did not operate in conjunction with internationally accepted Ombudsman standards, and Plaintiff raised

---

[2] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[3] Plaintiff uses Oxford Languages online to define Ombudsman as "an official appointed to investigate individuals' complaints against maladministration, especially that of public employees." ECF No. 15-1 at 2 n.1.

these complaints to Mr. Kapellas." *Id.* ¶ 23. Shortly thereafter, Mr. Kapellas demoted Plaintiff by "removing her as the Ombudsman for the HRD" and did so "in an effort to stop or reduce her engagement with employees to assist with or further their protected activity, including the filing of Equal Employment Opportunity ("EEO") complaints and contact with EEO advisors." *Id.* ¶¶ 24, 25. Simultaneously with Plaintiff's removal from the Ombudsman position, Plaintiff was ordered to run a working group to compare the standards of practice for the program against industry standards. *Id.* ¶ 27. The group found that the program was failing to abide by international standards, and this finding upset Mr. Kapellas and he began to attack Plaintiff "on one issue or another every month" and his treatment of Plaintiff changed substantially for the worse after the working group issued its findings. *Id.* ¶¶ 29, 30. Mr. Kapellas barred Plaintiff from requesting meetings with any person in senior leadership to discuss the findings of the group or for any other reason from that point on. *Id.* ¶ 31. Mr. Kapellas made comments to Plaintiff about people getting jobs because of where they were sitting when the job became available as opposed to being qualified and Plaintiff interpreted that to be a demeaning comment directed towards her. *Id.* ¶ 32. On one occasion, Mr. Kapellas told Plaintiff that he expected her to be submitting her resignation to him. *Id.* ¶ 33. Two months after being removed as Ombudsman for HRD, the Agency gave that position to a white male. *Id.* ¶ 78.

Plaintiff met with Ms. Karen Myers, the acting WHS deputy director and requested help and intervention from senior leadership. *Id.* ¶¶ 34, 35. Subsequently, at a monthly meeting with Mr. Kapellas, he stated he would look for Plaintiff's resignation the next time they met, and asked Plaintiff for a departure date but Plaintiff stated she was not resigning and would not give a departure date. *Id.* ¶¶ 37, 38.

Plaintiff states that she met with numerous other members of senior leadership and "[i]nstead of supporting [Plaintiff], the Agency harassed, bullied, intimidated, and engaged in wrongful conduct because Plaintiff was viewed as supporting the EEO activity of employees instead of supporting Agency leadership." *Id.* ¶¶ 41–43.

On June 16, 2017, Mr. Kapellas ordered Plaintiff to apologize to Ms. Tramble for being disrespectful, and in that same meeting told Plaintiff that she was being removed as Ombudsman for HRD because Plaintiff was disrespectful, and animosity existed between Plaintiff and HRD leadership. *Id.* ¶¶ 44, 45. Plaintiff met with Ms. Tramble on July 19, 2017, and at that meeting Ms. Tramble shoved books across the table and "accused Plaintiff of being disrespectful, lying, being untrustworthy, and advocating for and assisting an employee with an EEO complaint." *Id.* ¶ 47. Ms. Tramble directed a verbal tirade towards Plaintiff at the meeting and stated that she was "not building trust with her leadership" and told Plaintiff that she "will not question, or raise any concerns to anyone about Ms. Tramble's decisions." *Id.* ¶ 48. Ms. Tramble went on to note that one of the alleged incidents of disrespect involved "Plaintiff allegedly assisting and advising an employee on her EEO complaint." Plaintiff did not assist that employee with her complaint and "noted that it is a violation of ethical standards for [O]mbudsman to know or inquire whether an employee has filed an EEO complaint." *Id.* ¶¶ 49, 50. During this meeting, Plaintiff states that Ms. Tramble "repeatedly insulted and ridiculed Plaintiff, openly questioning [her] intelligence and competence in a very demeaning way." *Id.* ¶ 52.

On or about July 2018, Mr. Kapellas "stripped Plaintiff of the ability to execute the primary functions of her position – to counsel employees – by requiring her to obtain the employee's supervisor's permission for the employee to speak with her." *Id.* ¶ 63.

On or about February of 2019, Plaintiff "reported acts of bullying, harassment and intimidation from Mr. Kapellas to Mr. Mooney," the Chief of Staff for CMO, who failed to address her concerns. *Id.* ¶¶ 39, 67. Plaintiff states that Mr. Kapellas also ordered Plaintiff to run the program "in direct contradiction to the standards of practice and code of ethics for the Organizational Ombudsman programs." *Id.* ¶ 68.

On or about August 2019, Mr. Kapellas told Plaintiff he ceased processing her promotion and updating her position at the direction of a senior manager. *Id.* ¶ 74.

**B. Procedural Background**

Plaintiff first filed her EEO Complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 15, 2017. *Id.* ¶ 13. After she filed her EEO complaint, she was "treated even less favorably, was marginalized and was not promoted despite the paperwork for her promotion being partially completed." *Id.* ¶ 56. She received an adverse Final Agency Decision and appealed to the Office of Federal Operations. The appeal affirmed the EEOC decision and Plaintiff received a Right to Sue letter on July 29, 2021. *Id.* ¶ 14. Plaintiff filed her lawsuit on October 27, 2021, ECF No. 1. Defendant filed a Motion to Dismiss or for Summary Judgment on April 8, 2021. ECF No. 5. Plaintiff subsequently filed for a Motion for Leave to file a First Amended Complaint. ECF No. 7. Defendant does not oppose Plaintiff's Motion for Leave to file a First Amended Complaint and treats Plaintiff's First Amended Complaint as the operative Compliant in this matter, and files a renewed Partial Motion to Dismiss.[4] ECF No. 11 at 1.[5]

[4] As such, this Court will likewise treat Plaintiff's First Amended Complaint as the operative Complaint and rule as moot ECF Nos. 5 and 6; and grant ECF No. 7.

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

## II. STANDARD OF REVIEW

Defendant moves to dismiss Count IV of Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11. A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Indeed, the Court need not accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). The Court should not grant a motion to dismiss for failure to state a

claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 249–50 (1989)).

## III. DISCUSSION

Defendant moves to dismiss Count IV of the Amended Complaint, arguing that Plaintiff has failed to show that her treatment was sufficiently severe or pervasive to sustain a hostile work environment claim. This Court agrees. "Title VII renders it an unlawful employment practice for an employer ... to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 267–77 (4th Cir. 2015) (internal quotations and brackets omitted). "A hostile [work] environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Therefore, to prevail on a hostile work environment claim, a Plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected class]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id.* (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "That determination is made 'by looking at all the circumstances,' which 'may include [(1)] the frequency of the discriminatory conduct; [(2)] its severity; [(3)] whether it

is physically threatening or humiliating, or a mere offensive utterance; and [(4)] whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "It is not a mathematically precise test." *Id.; Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000). "Viable hostile work environment claims often involve repeated conduct." *Boyer-Liberto*, 786 F.3d at 277. "That is because, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (internal quotation marks and citation omitted). "[H]owever, an isolated incident of harassment, if extremely serious, can create a hostile work environment." *Id.* at 268. Defendant argues that Plaintiff has not met the third element of a hostile work environment claim, that she has failed to plead facts to allege conduct that is sufficiently severe or pervasive to create an abusive or hostile work environment. ECF No. 11 at 3–5.

> Plaintiff states that she was subjected to a hostile work environment when:
>
> (1) The agency harassed, bullied, intimidated and engaged in wrongful conduct because Plaintiff was viewed as supporting the EEO activity of employees instead of supporting Agency leadership. (2) Mr. Kapellas told Plaintiff she was being removed as Ombudsman because she was disrespectful and there was animosity between Plaintiff and HRD leadership. (3) Ms. Tramble shoved books across the table and accused Plaintiff of being disrespectful, lying, being untrustworthy, and advocating for and assisting an employee with an EEO complaint. (4) Ms. Tramble verbally accosted Plaintiff and stated that she was "not building trust with her leadership" and told Plaintiff that she "will not question, or raise any concerns to anyone about Ms. Tramble's decisions." (5) Plaintiff's contact with the Department of Defense population of employees was significantly reduced when Defendant removed her from being the Ombudsman to HRD. (6) Plaintiff was forced to administer the program at nights and on weekends. (7) Plaintiff was forced to administer the program without confidentiality in violation of international Ombudsman standards, which subjected Plaintiff and those employees who sought Plaintiff's help to disdain, criticism and ridicule from senior management. (8) The Defendant communicated to its senior leadership that Plaintiff did not "build trust" with senior leadership by breaching the confidentiality required of Ombudsman, thereby creating the unfair and false impression that Plaintiff was advocating for employees against leadership. (9) Plaintiff was removed from an email list, which curtailed her ability to do her job.

ECF No. 8 ¶¶ 42–49, 85–90. None of these instances, alone, or together, are sufficient to meet the severe or pervasive requirement. Other than the one instance where Ms. Tramble allegedly shoved books at Plaintiff, these appear to be instances where Plaintiff disagrees with management on how her position should be run. That alone is not actionable under Title VII. As the Fourth Circuit has explained:

> [w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII.

*Thorn v. Sebelius,* 766 F. Supp. 2d 585, 601 (D. Md. 2011) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). Even if this Court were to assume that these incidents were more than mere disagreements with management, Plaintiff's experiences would still not rise to a level sufficient to create a hostile work environment where she was not threatened or humiliated and it was not otherwise sufficiently severe. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (Plaintiff could not establish a hostile environment because although her treatment was often "disrespectful, frustrating, critical, and unpleasant," it did not establish treatment that was "physically threatening, humiliating, or otherwise sufficiently severe to create a hostile work environment."). Additionally, even considering the incident where Ms. Tramble allegedly shoved books across the table at Plaintiff, that one incident, alone or in the context of Plaintiff's other allegations, is not sufficiently severe to create a hostile work environment claim. *See Melendez v. Bd. of Educ. for Montgomery Cnty*., No. CV DKC 14-3636, 2017 WL 121769, at *16 (D. Md. Jan. 12, 2017), *aff'd*, 711 F. App'x 685 (4th Cir. 2017) (holding that the incident where a trash can was allegedly pushed at Plaintiff and

bruised her arm, was not enough to establish frequent hostile treatment where it happened only once). Therefore, because as a matter of law, Plaintiff cannot establish a hostile work environment, the Court will grant the Defendant's Motion to Dismiss Count IV of the Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion is granted. A separate Order follows.

Date: January 20, 2023

/s/
GEORGE J. HAZEL
United States District Judge